UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: ERIC FIRTH, Debtor

LANCE AND CLAUDIA BRADY,
Appellants,

v.

ERIC FIRTH,
Appellee-Debtor.

Case No. 16-cv-12964

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
DAVID R. GRAND

## OPINION AND ORDER AFFIRMING BANKRUPTCY COURT'S DECISION

## I. Introduction

This matter is before the Court as an appeal from the United States Bankruptcy Court for the Eastern District of Michigan. Appellants, Lance and Claudia Brady, appeal the Honorable Thomas J. Tucker's August 3, 2016 order granting the debtor's Chapter 7 discharge. For the following reasons, the Court will **AFFIRM** the United States Bankruptcy Court's order.

## II. Facts

The facts in this case are undisputed. The Appellants, Lance and Claudia Brady, are married. Claudia is the Appellee's mother. Lance is the Appellee's stepfather. On September 18, 2008, the Appellants loaned the Appellee between

-1-

$5,500 and $7,000.[1] On or about September 21, 2011, the Appellants loaned the Appellee an additional $23,000.00. On September 21, 2011, the Appellee signed a promissory note for $29,900.00.

During 2011 and 2012, the Appellee made payments on the loan which totaled $3,020.00. In 2012, the Appellee delivered several checks to the Appellants which totaled $2,820.00. However, these checks were not cashed because the Appellee told the Appellants that his checking account had insufficient funds.

On November 22, 2013, the Appellee filed the underlying bankruptcy case under Chapter 13 of the Bankruptcy Code. The Appellee still owed money to the Appellants at the time the bankruptcy case was filed. Nevertheless, the Appellee's original bankruptcy schedules did not list the Appellants as creditors. On February 18, 2014, the Appellee and his attorney attended the Meeting of Creditors. At this meeting, the Appellee testified that he listed all of his debts and liabilities. Later, at the same meeting, the Appellee testified that there were no errors or omissions in his bankruptcy paperwork.

In January 2015, the Appellants demanded that the Appellee resume making payments on the loan. The Appellee, however, did not resume making payments. In March 2015, the Appellants obtained an attorney, who discovered that the

---

[1] The exact amount of the loan is still disputed. According to the Appellants, all $7,000 was a loan. According to the Appellee, $1,500 of the $7,000 was a housewarming gift. Nevertheless, the amount of the loan has no bearing on the Court's decision.

2:16-cv-12964-GAD-DRG   Doc # 13   Filed 02/27/17   Pg 3 of 17   Pg ID 984

Appellee filed a Chapter 13 bankruptcy case. That same month, the Appellee forwarded a letter to the Appellants, asking to renegotiate the terms of the loan and indicating that he will "include" the debt in his the bankruptcy proceedings if they do not agree to renegotiation.

On April 30, 2015, the Appellee amended his Schedule F to add the debt owed to the Appellants. On June 26, 2015, the Appellants filed an adversary complaint against the Appellee pursuant to 11 U.S.C. § 523(a)(3)(A). On October 30, 2015, shortly before the hearing on the Appellants' motion for summary judgment, the Appellant converted the underlying bankruptcy case from Chapter 13 to Chapter 7. The Bankruptcy Court, based upon this conversion, rendered judgment in favor of the Appellee and discharged his debt—including the loan to the Appellants.

On January 14, 2016, during a Meeting of Creditors, the Appellee testified that, at the time he filed his bankruptcy case, he understood he had an obligation to repay the loan to the Appellants. Subsequently, the Appellants filed an adversary complaint pursuant to 11 U.S.C. § 727(a)(4)(A). The Appellants sought to have the Appellee's Chapter 7 discharge denied for having made a false statement under oath when he signed his original bankruptcy schedules. The adversary complaint also sought to deny the Appellee's discharge for making false statements under oath at the February 18, 2014 Meeting of Creditors, in which he testified that he

-3-

listed all of his liabilities and that there were no errors or omissions in his bankruptcy paperwork. A trial was held on August 2, 2016. The Bankruptcy Court rendered a                fifty-seven-minute bench opinion on August 3, 2016, and denied the Appellants' complaint. This appeal followed.

### III. Standard of Review from Bankruptcy Court

The Parties do not dispute the standard of review of a bankruptcy court's decision. The bankruptcy court's findings of fact are reviewed under the clearly erroneous standard. FED. R. BANKR. P. 8013. The bankruptcy court's conclusions of law are reviewed de novo. *Nuvell Credit Corp. v. Westfall (In re Westfall),* 599 F.3d 498, 501 (6th Cir. 2010). A bankruptcy court's finding of fraudulent intent is a factual finding that is reviewed for clear error. *Groman v. Watman (In re Watman),* 301 F.3d 3, 8 (1st Cir. 2002); *Brown v. Third Nat'l Bank (In re Sherman),* 67 F.3d 1348, 1353 (8th Cir. 1995); *see also Keeney v. Smith (In Re Keeney),* 227 F.3d 679, 685 (6th Cir. 2000) (stating that "[w]hether a debtor has made a false oath under section 727(a)(4)(A) is a question of fact."). "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed.' " *United States v. Mathews (In re Mathews),* 209 B.R. 218, 219 (6th Cir. BAP 1997) (quoting *Anderson v. City of Bessemer*

-4-

*City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)); *In re Taylor*, 461 B.R. 420, 422 (E.D. Mich. 2011).

## IV. Discussion & Analysis

11 U.S.C. § 727 governs discharge under Chapter 7 Bankruptcy. Section 727(a)(4)(A) of the Bankruptcy Code provides:

> (a) The court shall grant the debtor a discharge, unless—
> ...
> (4) the debtor knowingly and fraudulently, in or in connection with the case—
> (A) made a false oath or account.

"The elements of a violation of 11 U.S.C. § 727 must be proven by a *preponderance of the evidence* to merit denial of discharge." *In re Keeney*, 227 F.3d 679, 683 (6th Cir. 2000) (emphasis added). "The Bankruptcy Code should be construed liberally *in favor of the debtor*." *Id.* (emphasis added).

The Parties agree that a bankruptcy court's finding with respect to fraudulent intent are factual findings that are reviewed for clear error. *See* Dkt. No. 8, p. 6 (Pg. ID 471); Dkt. No. 10, p. 10 (Pg. ID 778). Therefore, the only issue in this appeal is whether it was clearly erroneous for the Bankruptcy Court to conclude that the Appellee did not make false statements with fraudulent intent. Dkt. No. 8, p. 8 (Pg. ID 473). To that end, to reverse the Bankruptcy Court, this Court must be left with a definite and firm conviction that a mistake was committed. *See Mathews*, 209 B.R. at 219.

-5-

The Appellants argue that there are six grounds for reversal of the Bankruptcy Court's decision. This Court will exam all six arguments.

### 1. Intention to Pay the Loan

The Appellants argue that the Bankruptcy Court erred when it concluded that the Appellee lacked fraudulent intent. Instead, the Bankruptcy Court found that the Appellee intended to pay the loan. Dkt. No. 8, p. 8 (Pg. ID 473). The Appellee conceded that his relationship with his mother and stepdad was strained. Dkt. No. 6, p. 104 (Pg. ID 115). The Appellee sometimes went multiple years without speaking or seeing his mother. *Id.*, p. 335 (Pg. ID 346). The Appellee went so far as to refuse even greeting cards from his mother. *Id.*, p. 121 (Pg. ID 132). According to the Appellants, the Bankruptcy Court clearly erred when it concluded, "that a person who is avoiding his mother and stepfather because of an extremely strained personal relationship intended to someday suddenly rematerialize with money to pay the debt." Dkt. No. 8, p. 13 (Pg. ID 478). This argument is unpersuasive for two reasons.

First, a strained relationship does not logically negate an intention to pay a loan. This is true in the same way that the statement, "I do not wish to speak to you" is different from the statement, "I will never repay you". The transfer of money does not require communication. This logic is underscored by Mr. Brady's testimony that, despite a strained relationship, "Yes, I believe [Appellee] wanted to

pay it back. He's always been good about paying things back, always." Dkt. No. 6, p. 359 (Pg. ID 370).

Second, the Bankruptcy Court did not omit the strained relationship from its opinion—the Bankruptcy Court explicitly analyzed the impact of the strained relationship on the Appellee's intention to pay. The Bankruptcy Court discussed, "[B]ecause of the strained relationship … [Appellee] felt that if he did not list them in the bankruptcy case … that he would be able to avoid having any contact with them … [n]ot for any reason, by the way, of trying to hinder, delay, or defraud the Plaintiffs from collecting their debt or in any way harming them, but simply for personal reasons he wanted to avoid any contact with them." Dkt. No. 6, pp. 444–45 (Pg. ID 455–56). The Bankruptcy Court's conclusion is reasonable in light of the Appellee's prior conduct of avoiding the Appellants while still acknowledging his debt. For example, the Appellee seemed to reject greeting cards from his mother and stepfather, and any money contained therein, not in spite of his debt, but rather not to exacerbate the debt. *See* Dkt. No. 8, p. 11 (Pg. ID 476) ("Why, if I owe you money, why are you going to send money?").

Therefore, an intention to repay does not require an amicable relationship and the Bankruptcy Court reasonably analyzed the effect of the tumultuous relationship alongside the Appellee's intention to pay. Accordingly, the Bankruptcy Court's decision on this point was not clearly erroneous.

-7-

*2. Repeated False Statements*

Next, the Appellants argue that the Appellee's repeated false statements were sufficient to satisfy the fraudulent intent element of 11 U.S.C. § 727(a)(4)(A). Dkt. No. 8, p. 13 (Pg. ID 478). The Appellee falsely stated his creditors three times—once when he signed his original bankruptcy schedule and twice during a Meeting of Creditors. According to the Appellants, Appellee's "fraudulent intent can be inferred from his continuing pattern of false statements." Dkt. No. 8, p. 14 (Pg. ID 479). For this proposition, the Appellants rely on *In re Taylor*, 461 B.R. 420 (E.D. Mich. 2011) (Duggan, J.). However, the facts in *Taylor* are distinguishable from the facts here.

In *Taylor*, the debtor failed disclose *numerous* assets (state tax refunds, federal tax refunds, accounts receivable from a law practice, gas royalties, rental income, and a potential cause of action). *See In re Taylor*, 461 B.R. 420, 422 (E.D. Mich. 2011). Further distinguishing that case is the fact that the Trustee informed Taylor of his omissions. But, Taylor disregarded his Trustee and "never sought to amend his bankruptcy schedule or related documents to include the omitted assets[.]" *Id.* at 423. *Taylor* is distinguishable from this case. Here, the Appellee only failed to disclose one asset, not six, like in *Taylor*. Additionally, the Appellee voluntarily amended his bankruptcy schedule. There is no evidence that the

-8-

Appellee disregarded a warning from Trustee or any other person. Therefore, *Taylor* is much more egregious than the instant case.

In addition to relying on a distinguishable case, the Appellants' argument takes for granted the permissiveness of the relevant bankruptcy law. "[F]radulent intent *can* be found based on the cumulative effect of a series of innocent mistakes[.]" *Id.* (emphasis added). "[C]ourts have held that a reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering *may* rise to the level of the fraudulent intent necessary to bar a discharge." *Id.* (emphasis added). Here, the Bankruptcy Court reasoned that, "courts are not required to find fraudulent intent solely from the existence of reckless disregard for the truth…[rather,] the Court must consider the totality of the circumstances." Dkt. No. 8-11 p. 21 (Pg. ID 568). Therefore, repeated misstatements can, but do not always rise to the level of intentional fraud.

In considering the distinction between *Taylor* and the permissive plain language of the law, this Court cannot say that the Bankruptcy Court clearly erred by not finding that the Appellees false statements were insufficient to satisfy fraudulent intent.

### 3. Appellee's Inconsistent Explanations

Initially, the Appellee claimed that he didn't understand that his mother and stepdad were creditors within the meaning of the Bankruptcy Code, despite the fact

that he signed a promissory note. Dkt. No. 6, p. 78 (Pg. ID 89). Based on this, Appellants argue that the Bankruptcy Court erred by not considering the Appellee's "inconsistent explanations" and "contradictory excuses". The Appellants' argument is factually incorrect. The Bankruptcy Court explicitly considered the Appellee's inconsistent explanations. The Bankruptcy Court said, on the record:

> "*The Defendant did attempt at various times in his testimony at trial to explain or try to say that he didn't think that the Plaintiffs were Creditors... the Defendant seemed to believe and want the Court to believe that he thought that the Plaintiffs were not Creditors because this was a family loan, rather, informal loan*; a loan which would not appear as a debt on the Defendant's credit report for which the Defendant would not receive monthly statements or bills from the Plaintiffs, and perhaps most importantly because the Defendant says that with the approval of his mother, Plaintiff Claudia Brady, and he had such approval from her he testified, he could delay payments, making payments required under the promissory note, the $400 a month payments that I referred to earlier, and payments in general on this debt to the Plaintiffs, when the Defendant had financial problems that were such that made him unable to make payments on this debt and still meet his other bills and living expenses."

Dkt. No. 6, p. (435 (Pg. ID 446) (emphasis added).

The Bankruptcy Court, not only discussed the Appellee's inconsistent explanations, but also used that evidence to support its conclusion that the Appellee made a false statement. Therefore, the Bankruptcy Court did not err. It discussed and considered the evidence which the Appellants claim it ignored.

-10-

*4. Appellee's Obligation to be Truthful*

Next, the Appellant argues that the Appellee "demonstrated a specific intent to violate his obligation as a bankruptcy debtor by not [*sic*] failing to testify truthfully about the accuracy of his schedules[.]" Dkt. No. 8, p. 15 (Pg. ID 480). This argument mistakenly conflates actions with intentions. Additionally, Appellants miss the point that the debtor's intent must be knowing *and fraudulent* to deny discharge. *See* 11 U.S.C. § 727(a)(4). Absent a clear pattern of reckless and cavalier disregard for the truth, a party objecting to a debtor's discharge must demonstrate "that a debtor's omissions constitute an intent to hinder, delay, or defraud his creditors." *In re Hamo*, 233 B.R. 718, 724 (B.A.P. 6th Cir. 1999).

In this case, the Bankruptcy Court held that the Appellee's false statement was not intended to hinder, delay or defraud because the Appellee intended to pay the loan, not escape it. See Dkt. No. 6, pp. 445, 450 (Pg. ID 456, 461). The Appellants attempt to persuade this Court that the Appellee intended fraud simply because he violated the bankruptcy code. But, without more, violation of the Bankruptcy Code does not automatically equate to fraudulent intent. Therefore, this argument is unpersuasive and the Bankruptcy Court did not clearly err.

*5. The 2015 Letters*

-11-

In January 2015, about 14 months after filing for bankruptcy, Appellants mailed a "Dear Eric" letter, demanding payment of his debt. Dkt. No. 8-7. Appellee responded by requesting a temporary change in the repayment terms of the debt. Dkt. No. 8-8. The Appellee explained that, "[i]f you do not want to accept my offer, I will be forced to have my attorney include this debt in my bankruptcy." *Id.* According to the Appellants, the letters show Appellee's awareness of the debt and his willingness to disregard his obligation to disclose the debt in furtherance of fraud. Dkt. No. 8, p. 16 (Pg. ID 481). The Bankruptcy Court disagreed. The Bankruptcy Court concluded that the letters, corroborated Appellee's intention to repay the loan because the Appellee knew that if he disclosed the debt, the debt would be discharged.

When looking at the letters in isolation, the Appellants' argument is plausible—Appellee's letter can be characterized as a threat and a defiant disregard for bankruptcy disclosure procedures for his own personal gain. On the other hand, when considering the totality of circumstances, the Bankruptcy Court's decision is reasonable—Appellee's letter corroborates his testimony and his step father's testimony that the Appellee intended to repay the loan, and not the discharge loan. Faced with two permissible views of evidence, this Court cannot say with firm conviction that the Bankruptcy Court clearly erred. *See Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985) ("Where there are two permissible

-12-

views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").


*6. Fraud to Other Parties*

Lastly, the Appellants argue that the "problem with the Bankruptcy Court's analysis is that it concentrates myopically on whether the Appellant intended to defraud the Appellants. The Bankruptcy Court did not consider (in any meaningful way) how the Appellee's omissions and false statements may have defrauded the Trustee, other creditors, or even the Bankruptcy Court itself." Dkt. No. 8, p. 16 (Pg. ID 481). The trial transcript, however, contradicts this argument. The Bankruptcy Court did consider fraud to other parties. But, Appellants failed to produce any evidence of fraud to other parties. The transcript reads:

> Mr. Warr: One last thing. The issue isn't only his relationship, the Debtor's relationship with Creditors; it's also his relationship with the Court…
>
> THE COURT: Well, let me just say, the Bankruptcy Court at least as to this Judge, does not appreciate any errors or omissions on Debtor's, a bankruptcy Debtor's Schedules, statement of financial affairs; it goes without saying. But I'll mention it just for the record. That – that's not the same as saying any time there's an omission or error the Debtor gets denied a discharge as you know.
>
> MR. WARR: Oh, I know. I mean that's why we have these other, you know, fraudulent intent. Here he's saying, "I'm not going to add you in if you do not – if you play ball with me," basically, "I won't add

-13-

you in." That becomes an offense against the Court, it becomes an offense against the Trustee. I'm sure the Trustee would want to know, "Hey they're especially – it's one thing to leave off Discover Card, but you're leaving off a Creditor who is a relative," and you could have issues with insiders, as I pointed out before, fraudulent conveyances; I'm sure a Trustee would have wanted to know about that, but.

. . . .

THE COURT: Let's go back to the Chapter 13 phase of the case, the main case. You said the Chapter 13 Trustee would have wanted to know if there were insider Creditors because --for the liquidation analysis type requirements about confirming a plan. Chapter 13 Trustee would want to know if there -- are there any possible avoidable preferences, fraudulent transfers, particularly to insiders. *You also said I think a little bit ago that you didn't think there were any such, actually any such avoidable transfers in this case to the Bradys. Is that right*?

MR. WARR: *That's correct*.

THE COURT: *And there's been no evidence presented in this trial that there were any such possibly avoidable transfers made to the Bradys prepetition that might have been avoidable as preferences or fraudulent transfer, right*?

MR. WARR: *No, there's not*.

THE COURT: *And in fact isn't – doesn't the evidence show the last payment -- does the evidence show that the last payment made to the Bradys by the Defendant occurred more than a year before he filed his bankruptcy petition in November 2013, is that right*?

MR. WARR: *That's correct*.

THE COURT: *Okay. So at least within the one year insider preference window there were no transfers to the Defendant -- to the Plaintiff*.

MR. WARR: *Exactly*.

-14-

THE COURT: All right. All right, go on.

Dkt. No. 6, pp. 404–07 (Pg. ID 415–18) (emphasis added).

Based on the trial transcript, it is clear that the Bankruptcy Court did consider the effect of the false statements on third parties such as the Bankruptcy Court itself, the Trustee, and other creditors. However, at that time, Counsel for the Appellants conceded that there was no evidence of fraudulent impact (such as fraudulent conveyances or avoidable transfers) from the Chapter 13 stage or mentioned at trial. Equipped only with speculation, the Appellants again attempt to persuade this Court that other parties may have been defrauded. Without any evidence, this Court cannot rely on that speculation. Therefore, the Bankruptcy Court did not err when it rejected a similar, unsupported argument.

### 7. Additional Arguments Made During the Hearing

During the hearing, Appellants argued, for the first time, that the Bankruptcy Court applied the wrong legal standard. Although the bankruptcy court's conclusions of fact are reviewed under the clearly erroneous standard, conclusions of law are reviewed de novo. *Nuvell Credit Corp. v. Westfall (In re Westfall),* 599 F.3d 498, 501 (6th Cir. 2010). In furtherance of this new argument, the Appellants cited *In re Koch*, No. 15-42834, 2017 WL 151590 (Bankr. E.D. Mich. Jan. 13, 2017) and *In re Budrow*, 194 B.R. 172 (Bankr. W.D. Tenn. 1996). In essence, the Appellants argued that an intentional omission of a creditor is enough to satisfy

-15-

Section 727(a)(4). The Appellants' interpretation of *Koch* and *Budrow* would essentially eliminate fraudulent intent as a requirement to deny a bankruptcy discharge. This argument is unpersuasive for two reasons.

First, neither *Koch* nor *Budrow* are binding on this Court. *Keeney*, however, is binding on this Court. *Keeney* requires a "statement with fraudulent intent" to deny a debtor discharge. *In re Keeney*, 227 F.3d 679, 685 (6th Cir. 2000). Therefore, as a matter of precedent, the Appellants reliance on *Koch* and *Budrow* is misplaced when faced with *Keeney*.

Second, the Appellants fundamentally misread *Koch* and *Budrow*. Neither *Koch* nor *Budrow* relied only on an intentional omission as grounds to deny a debtor discharge. Koch was a restauranteur and investor that omitted a $350,000 debt. The court in *Koch* reasoned that "[a] finding of fraudulent intent is a question of fact that is highly dependent on the bankruptcy court's assessment of the debtor's credibility." *In re Koch*, No. 15-42834, 2017 WL 151590, at *10 (Bankr. E.D. Mich. Jan. 13, 2017). The court denied discharge after finding that "Koch's testimony was not credible, and her proffered justifications belied her record as a sophisticated businesswoman[.]" *Id.*, at *1.

*Budrow* is also unhelpful to the Appellants' argument. The court in *Budrow* held that, "these debtors demonstrated a malicious motive to their filing, which was made to punish and frustrate [a creditor]." *In re Budrow*, 194 B.R. 172, 175

-16-

(Bankr. W.D. Tenn. 1996). Therefore, despite the Appellants' last-minute argument to the contrary, fraudulent intent is required to deny debtor discharge. Thus, the Bankruptcy Court applied the correct standard.

## V. Conclusion

The clearly erroneous standard is a substantial, but not insurmountable hurdle. Nevertheless, Appellants have failed to demonstrate that the Bankruptcy Court clearly erred in such a way as to leave this Court with the definite and firm conviction that a mistake was committed. Accordingly, the Court will **AFFIRM** the Bankruptcy Court's decision.

**SO ORDERED.**

Dated: February 27, 2017

s/Gershwin A. Drain

Detroit, MI                              HON. GERSHWIN A. DRAIN
                                         United States District Court Judge

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, February 27, 2017, by electronic and/or ordinary mail.

/s/Felicia Moses for Tanya Bankston
Case Manager, (313) 234-5213